AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

FILED ———— LODGED
———— RECEIVED

FEB 01 2019

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>8601 NE 36th Street, Vancouver, Washington 98662,<br>more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.   MJ19-5015

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

8601 NE 36th Street, Vancouver, Washington 98662, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7201 | Tax Evasion |
| 26 U.S.C. § 7206(2) | Preparation of False Tax Returns |

The application is based on these facts:

✔ See Affidavit of Christian Martin, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Christian D. Martin*
*Applicant's signature*

Christian D. Martin, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 02/01/2019 _____

*Judge's signature*

City and state:  Tacoma, Washington

J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

1 | **AFFIDAVIT**

2 | STATE OF WASHINGTON   )

3 |                       )   ss

  | COUNTY OF PIERCE      )

4 |

5 | I, Christian D. Martin, being first duly sworn on oath, depose and say:

6 | ## AFFIANT BACKGROUND

7 | 1.    I am a Special Agent with the Internal Revenue Service (IRS) and have

8 | been since September 2001. My current assignment is to conduct and assist in

9 | investigations of various white collar crimes including tax fraud, tax-related fraud, and

10 | identity theft. My training and experience includes completion of the basic training

11 | requirements for a Special Agent at the Federal Law Enforcement Training Center and

12 | participation in numerous investigations, during the course of which I have interviewed

13 | suspects and witnesses, executed court-authorized search and arrest warrants, and used

14 | other investigative techniques to secure relevant information. As a result of my training

15 | and experience, I am familiar with techniques and methods used by individuals involved

16 | in criminal activity to conceal their activities from detection by law enforcement.

17 | 2.    Facts in this affidavit are based on my personal knowledge, my training and

18 | experience, and information I have gathered from other law enforcement personnel,

19 | witnesses, and documents obtained during the course of the investigation. Because this

20 | affidavit is submitted for the limited purpose of establishing probable cause in support of

21 | the application for a search warrant, it does not include each and every fact known to me

22 | concerning this investigation. I have set forth only those facts that I believe are relevant

23 | to the determination of probable cause to support the issuance of the requested warrant.

24 | ## PURPOSE OF AFFIDAVIT

25 | 3.    I make this affidavit in support of an application under Rule 41 of the

26 | Federal Rules of Criminal Procedure for a warrant to search the premises located at

27 | 8601 NE 36th Street, Vancouver, Washington 98662 (hereinafter referred to as the

28 | "PREMISES" and more particularly described in Attachment A to that application and

AFFIDAVIT OF CHRISTIAN D. MARTIN - 1
USAO #2019R00104

1  incorporated by reference herein) for documents, records, electronic media and other

2  items (more particularly described in Attachment B to that application and incorporated

3  by reference herein) which constitute evidence of the commission of criminal offenses,

4  fruits of those offenses, and property designed or intended for use or which has been used

5  as the means of committing criminal offenses, that is, evasion of the payment of personal

6  and corporate taxes, in violation of Title 26, United States Code, Section 7201; and

7  willful aiding or assisting in the preparation of false tax returns, in violation of Title 26,

8  United States Code, Section 7206(2).

9  **APPLICABLE LAW**

10      4.      Title 26, United States Code, Section 7201 provides that whoever willfully

11  attempts in any manner to evade or defeat any tax imposed by this title or the payment

12  thereof shall, in addition to other penalties provided by law, be guilty of a felony and,

13  upon conviction thereof, shall be fined not more than $250,000 ($500,000 in the case of a

14  corporation), or imprisoned not more than 5 years, or both, together with the costs of

15  prosecution.

16      5.      Title 26, United States Code, Section 7206(2) provides that whoever

17  willfully aids or assists in, or procures, counsels, or advises the preparation or

18  presentation under, or in connection with any matter arising under, the internal revenue

19  laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to

20  any material matter, whether or not such falsity or fraud is with the knowledge or consent

21  of the person authorized or required to present such return, affidavit, claim, or document

22  shall, in addition to other penalties provided by law, be guilty of a felony and, upon

23  conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a

24  corporation), or imprisoned not more than 3 years, or both, together with the costs of

25  prosecution.

26  **SUMMARY OF INVESTIGATION**

27      6.      This investigation concerns Conexion Latina, a business providing

28  immigration and accounting services to Vancouver's Hispanic community.  Conexion

AFFIDAVIT OF CHRISTIAN D. MARTIN - 2
USAO #2019R00104

1  Latina is operated by SAUL VALDEZ and his mother, Abby Eden-Albrecht, at the

2  PREMISES.  Conexion Latina has a business website, the address of which is

3  conexionlatinapdx.com, which lists the PREMISES as the business location under the

4  section "Contact us."  The website also includes biographies for its two "Public

5  Notaries," Albrecht and VALDEZ, and lists VALDEZ as the company's CEO.  The

6  "Services" page of the website includes a list of services provided by the company, which

7  includes "Accounting" and, specifically "personal taxes."  Additionally, on the Conexion

8  Latina homepage is the statement, "We will get the maximum possible refund!"

9        7.     On November 16, 2018, I received a referral from the Return Preparer

10  Program coordinator of the IRS Criminal Investigation Division's Seattle Field office.

11  The referral, which originated with the Scheme Development Center (SDC),[1] alleges that

12  VALDEZ, doing business as Conexion Latina, is preparing false federal income tax

13  returns.  Specifically, the referral alleges that VALDEZ is preparing returns that contain

14  questionable Schedule A itemized deductions including unreimbursed employee business

15  expenses (UEBEs) and legal fees.  UEBEs are miscellaneous itemized deductions (MIDs)

16  that can be deducted by employees on their respective Schedules A attached to their Form

17  1040.  UEBEs must be (1) paid or incurred during the year, for carrying on your trade or

18  business of being an employee, and (2) ordinary and necessary.  Additionally, MIDs are

19  subject to a two percent (2%) limit, and the deduction is calculated by adding together all

20  MIDs and subtracting two percent (2%) of one's adjusted gross income.  It is particularly

21  important to note that expenses for commuting, or driving to work from home and vice

22  versa, are not deductible as UEBE, and neither are uniforms, unless the uniforms are

23  required as a condition of employment *and* not suitable for everyday wear.  Legal fees are

24  deductible if the expense is incurred attempting to produce or collect taxable income or

25  paid in connection with the determination, collection, or refund of any tax.

26

27  [1] The Scheme Development Center (SDC) reviews and analyzes tax returns to detect fraudulent
28  refund schemes.

AFFIDAVIT OF CHRISTIAN D. MARTIN - 3
USAO #2019R00104

1    8.    The SDC referral also indicated that VALDEZ did not sign any of the

2  returns as the paid preparer.  When a third-party tax preparer creates and files a tax return

3  on behalf of a taxpayer, he is required by law to list on the return his name or tax-

4  preparation firm's name, as well as his phone number and address.  A tax preparer is also

5  required to list on the return his Preparer Tax Identification Number[2] (PTIN) and/or his

6  firm's employer identification number (EIN).  In my experience and expertise with other

7  schemes in which tax preparers have defrauded a taxpayer or the federal government, I

8  am aware that the tax preparer often does not provide this identifying information on the

9  return.  By failing to provide identifying information, the tax preparer attempts to evade

10  detection and liability for false information that may be set out in the return.

11    9.    Because VALDEZ did not sign any of the returns, the SDC could not

12  simply search tax returns for VALDEZ's identifying information.  Instead, the SDC

13  attempted to identify the returns that had been prepared by VALDEZ on the basis of

14  other information; specifically: (a) the email addresses associated with electronically-

15  submitted tax returns;[3] (b) the IP addresses associated with electronically-submitted tax

16  returns;[4] and (c) the Device Identification number (Device ID) associated with the

17  electronically-submitted tax returns.[5]  The SDC found 2,845 federal income tax returns

---

[2] Anyone who prepares or assists in preparing federal tax returns for compensation must have a valid PTIN before preparing returns.

[3] When electronically submitting a Federal Income Tax return to the IRS, taxpayers and preparers have the option to input an email address so that they may receive notifications about their returns via email.

[4] An IP address is a unique numerical label assigned to a device, like a computer or wireless router, participating in a computer network that uses IP for communication.  An IP address serves two principal functions: interface identification and location addressing.  IP addresses can be used to track internet usage to a particular Internet Service Provider customer.

[5] The IRS implemented a Device ID field for electronic return filers and preparers for processing year 2015.  The Device ID should contain unique data, accessed and transmitted by the software used to create the electronic return, which will identify the specific computer from which the tax return was electronically filed.  The Device ID field was voluntary for processing year 2015 but became mandatory for processing year 2016.

AFFIDAVIT OF CHRISTIAN D. MARTIN - 4
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  for the tax year 2017 that shared one or more of these criteria with email addresses, IP

2  addresses, or Device IDs associated with VALDEZ or Conexion Latina.  Of these

3  2,845 returns, ninety-four percent (94%) claimed refunds and forty-six percent (46%)

4  claimed UEBEs.  The national averages for 2017 federal income tax returns include

5  eighty-two percent (82%) that claim refunds and ten percent (10%) that claim UEBEs, so

6  the returns believed to have been prepared by VALDEZ and Conexion Latina are

7  significantly above the national averages.

8        10.    As previously mentioned, one of the identifiers searched by the SDC in

9  determining which returns were prepared by VALDEZ was email address.  An email

10  address is composed of three parts:  the local-part, which comes at the beginning; an @

11  symbol, which comes immediately after the local-part; and the domain.  The domain

12  name for Conexion Latina's website is conexionlatinapdx.com.  Of the 2,845 returns

13  identified by the SDC as having been prepared by VALDEZ, 1,449 were submitted with

14  an email address that contained "conexionlatinapdx" either in the local-part or the

15  domain.  Forty four additional returns were submitted with an email address that

16  contained "conexionlatina" in the local-part, and numerous other submitted returns

17  contained variations of the name SAUL VALDEZ, including saulvaldezusa@gmail.com.

18        11.    Conexion Latina was assigned EIN 81-3600183 by the IRS in August 2016

19  and is listed as a single member limited liability company with VALDEZ being the single

20  member.  VALDEZ filed his 2015 and 2016 Forms 1040 in December 2017 and reported

21  the income and expenses for Conexion Latina on a Schedule C attached to each Form

22  1040.  VALDEZ's 2017 Form 1040 was due to be filed by April 17, 2018 but has yet to

23  be filed.  Additionally, no 2017 return has been filed for Conexion Latina.

24                              **Client Interviews**

25        12.    After the SDC discovered the tax returns prepared and filed by VALDEZ, I

26  selected four of his clients to interview.  All four clients had their returns prepared by

27  VALDEZ in 2018.  Additionally, all four clients filed 2017 federal income tax returns

28  with questionable UEBEs and legal expenses.  The expenses are questionable because

AFFIDAVIT OF CHRISTIAN D. MARTIN - 5
USAO #2019R00104

they are not typical for the clients' stated occupations and they do not appear to be specific to the client. For instance, three of the clients' returns contain a parking expense of $2,100 and the fourth contains a parking expense of $2,101. Two clients' returns contain a legal expense of $1,500 and the other two contain a legal expense of $2,500. Two clients even had the exact same vehicle information on their respective forms: a placed-in-service date of 02/01/2017; total miles driven of 13,559; business miles of 9,051; commuting distance of 15 miles; and commuting miles of 1,200.

13.     On January 4, 2019, I interviewed a witness referred to herein as "MC." MC was shown the Washington Department of Licensing photo of VALDEZ, and MC confirmed that VALDEZ prepared MC's 2017 Form 1040. MC was shown a picture of the PREMISES and confirmed that VALDEZ prepared MC's return in an office within the PREMISES. MC met VALDEZ at the PREMISES and sat with VALDEZ in his office while he prepared MC's return on a desktop computer. Upon completion, VALDEZ printed a copy of MC's return and manually completed the "Paid Preparer Use Only" section. In this section, VALDEZ printed and signed his name and printed the name, address, phone number, and EIN of the business along with his PTIN and the date, August 10, 2018. MC allowed me to review and make a copy of MC's return. The "Paid Preparer Use Only" section on the electronically filed return, however, is blank. The electronically filed return was transmitted to the IRS on August 10, 2018. MC paid VALDEZ between $150 and $200 for his service.

        a.     MC's filed 2017 Form 1040 contains an expense of $2,500 for legal fees on line 23 of the Schedule A, but MC stated that he/she did not provide this expense to VALDEZ or discuss it with VALDEZ.

        b.     MC's return also contains an expense of $3,242 ($1,141 for MC and $2,101 for MC's spouse) for parking fees, tolls and transportation included in the total on line 21 of the Schedule A. MC stated that he/she did not provide this expense to VALDEZ or discuss it with VALDEZ.

AFFIDAVIT OF CHRISTIAN D. MARTIN - 6
USAO #2019R00104

1      14.    On January 8, 2019, I interviewed a witness referred to herein as "MR."

2 MR was shown the Washington Department of Licensing photo of VALDEZ, and MR

3 confirmed that VALDEZ prepared MR's 2017 Form 1040. MR was shown a picture of

4 the PREMISES and confirmed that VALDEZ prepared MR's return in an office within

5 the PREMISES. MR said that VALDEZ's office is just inside and to the right of the

6 front door of the PREMISES. MR paid VALDEZ approximately $90 cash for his

7 service. MR met VALDEZ at the PREMISES and sat with VALDEZ in his office while

8 he prepared MR's return on a desktop computer. MR said VALDEZ gave MR a copy of

9 the return, but MR could not find it for the interview. MR's 2017 Form 1040 was

10 electronically transmitted to the IRS on May 14, 2018.

11      a.    MR's filed 2017 Form 1040 contains an expense of $1,500 for legal

12      fees on line 23 of the Schedule A. MR stated that he/she incurred approximately

13      $3,000 in legal fees in 2017 related to a DUI. MR also stated that VALDEZ asked

14      if MR paid legal fees in 2017, but did not ask if the legal fees were related to

15      income or taxes.

16      b.    MR's return also contains an expense of $2,100 for parking fees,

17      tolls and transportation included in the total on line 21 of the Schedule A. MR

18      pays between $2 and $5 to park at work, and MR told investigators that VALDEZ

19      calculated the parking expense based on that dollar range and the number of days

20      MR worked. MR did not provide VALDEZ with any parking receipts, and MR

21      was not informed by VALDEZ that fees paid to park a car at work are

22      nondeductible commuting expenses.

23      c.    MR's return contains a vehicle expense of $5,837 included in the

24      total on line 21 of the Schedule A. According to MR, this expense was calculated

25      by multiplying 10,910 miles by the standard mileage rate of $.535. Driving is not,

26      however, one of MR's work duties. MR said that VALDEZ asked MR how far

27      MR's commute was, but MR did not know, so VALDEZ used Google Maps to

28      calculate the distance at 50 miles, and then multiplied that number by the

1   approximate number of shifts that MR worked.  MR was not informed by

2   VALDEZ that commuting is not deductible.

3          d.      MR's return also contains a meals and entertainment expense of

4   $2,544 included in the total on line 21 of the Schedule A.  MR works as a waiter in

5   a restaurant and sometimes buys meals during shifts.  MR does not conduct a trade

6   or business and, therefore, does not have deductible business-related meals or

7   entertainment.  VALDEZ did not inform MR that MR's meals were a

8   nondeductible personal expense.

9          e.      MR's return contains a tools and supplies expense of $957 included

10   in the total on line 21 of the Schedule A.  MR stated that he/she did not incur this

11   expense and did not provide it to VALDEZ.

12          f.      Lastly, MR's return contains an expense for uniforms of $1,190

13   included in the total on line 21 of the Schedule A.  MR did have to buy black

14   pants, black shirts, and slip-resistant black shoes for work, but MR said that these

15   items cost only approximately $300.  MR did not provide VALDEZ with the

16   $1,190 figure.  Also, the clothes MR wears for work appear to be suitable for

17   everyday wear and, therefore, would not be a deductible expense.  VALDEZ did

18   not inform MR of the rules for these requirements for the deduction.

19          15.    My original intent when arriving at MR's home was to interview MR's

20   child, referred to herein as "JL," who's 2017 Form 1040 was also prepared by VALDEZ.

21   MR said that JL had moved away, but that MR could answer any questions I had because

22   MR was the one who had JL's return prepared by VALDEZ.  MR said JL was a college

23   student in 2017 and worked part-time in retail.  MR confirmed that VALDEZ prepared

24   JL's 2017 Form 1040 at the PREMISES.  MR paid VALDEZ $190 in cash to prepare

25   JL's 2017 Form 1040.  JL's 2017 Form 1040 contained the following questionable

26   expenses:  legal fees of $1,500 on line 23 of the Schedule A; a vehicle expense of $4,842

27   included in the total on line 21 of the Schedule A; a parking expense of $2,100 included

28   in the total on line 21 of the Schedule A; and meals of $586 included in the total on line

AFFIDAVIT OF CHRISTIAN D. MARTIN - 8
USAO #2019R00104

1  21 of the Schedule A.  MR immediately recognized that JL's legal fees and parking

2  expenses were the same as those deducted in MR's 2017 Form 1040.  MR said JL did not

3  incur any of these expenses and MR did not provide these expenses to VALDEZ.  MR

4  provided me with a copy of JL's 2017 Form 1040, which MR made from the copy

5  provided by VALDEZ.  The "Paid preparer use only" section is blank.  JL's return was

6  electronically transmitted to the IRS on August 28, 2018.

7          16.     On January 9, 2019, I interviewed a witness referred to herein as "BR."  BR

8  was shown the Washington Department of Licensing photo of VALDEZ, and BR

9  confirmed that VALDEZ prepared BR's 2017 Form 1040A.  BR was shown a picture of

10  the PREMISES and confirmed that VALDEZ prepared BR's return in an office within

11  the PREMISES.  BR said VALDEZ's office is just inside and to the right of the front

12  door of the PREMISES.  BR paid VALDEZ $204.63 via credit card to prepare BR's

13  2017 Form 1040A.  BR allowed me to copy the payment receipt and BR's 2017 Form

14  1040A, received from VALDEZ.  The payment receipt was originally emailed to

15  saulvaldezusa@gmail.com and printed for BR by VALDEZ.  The "Paid preparer use

16  only" section of BR's copy is blank.  BR met VALDEZ at the PREMISES and sat with

17  VALDEZ in his office while he prepared BR's 2017 Form 1040A on a desktop computer.

18  Prior to meeting with VALDEZ, BR used TurboTax online to prepare his/her 2017

19  Form 1040A, but did not file it.  BR said the refund due on the TurboTax version was

20  approximately $500 less than the refund calculated by VALDEZ, but BR no longer had

21  access to the file to show me.  BR said VALDEZ asked few questions while preparing

22  BR's 2017 Form 1040A.  BR's filed 2017 Form 1040A contains an education credit of

23  $718 on line 33, which is based on education expenses of $3,430.  BR's Form 1098-T,[6]

24  which BR received from Clark College, shows qualified tuition expenses of only

25  $550.55.  BR confirmed that he/she provided the Form 1098-T to VALDEZ, that the

26  _____

27  [6] The Form 1098-T is prepared by eligible colleges and/or post-secondary schools for each
    student who paid qualified educational expenses.  The Form 1098-T reports, among other things,

28  the total amount of qualifying educational expenses either paid by or billed to the student.

AFFIDAVIT OF CHRISTIAN D. MARTIN - 9
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   $550.55 was all that BR had paid for education expenses in 2017, and that he/she did not

2   provide VALDEZ with the expense of $3,430.  BR's return was electronically

3   transmitted to the IRS on August 23, 2018.

4        17.    On January 9, 2019, Special Agent (SA) Jason Nix and I interviewed a

5   witness referred to herein as "MM."  MM does not speak fluent English and SA Nix

6   served as an interpreter.  MM was shown the Washington Department of Licensing photo

7   of VALDEZ, and MM confirmed that VALDEZ prepared MM's 2017 Form 1040.  MM

8   was shown a picture of the PREMISES and confirmed that VALDEZ prepared MM's

9   return in an office within the PREMISES.  MM paid VALDEZ $195 via credit card for

10  his service, and MM provided me with the receipt, which I copied.  The receipt was

11  originally emailed to saulvaldezusa@gmail.com and printed for MM by VALDEZ.  MM

12  met VALDEZ at the PREMISES and sat with VALDEZ in his office while he prepared

13  MM's return on a desktop computer.  Upon completion, VALDEZ printed a copy of

14  MM's return and completed the "Paid Preparer Use Only" section.  In this section,

15  VALDEZ printed and signed his name and printed the name, address, phone number, and

16  EIN of the business, along with his PTIN.  The "Paid Preparer Use Only" section on the

17  filed return is blank.  MM's return was electronically transmitted to the IRS on

18  September 19, 2018.

19          a.    MM's filed 2017 Form 1040 contains an expense of $2,500 for legal

20          fees on line 23 of the Schedule A.  MM did not provide this expense to VALDEZ.

21          b.    MM's 2017 Form 1040 also contains the following UEBE's on line

22          21 of the Schedule A: a vehicle expense of $4,842; parking of $2,100; meals and

23          entertainment of $958; tools and supplies of $990; and uniforms of $871.  MM

24          said that the only expense he/she provided to VALDEZ was for uniforms, but that

25          the amount he/she provided was much less than what is reported on the return.

26          Moreover, the pants and slip-resistant shoes that MM purchased for work appear

27          to be suitable for everyday wear and, therefore, would not be a deductible expense.

28          In addition, VALDEZ did not collect information from MM to support the vehicle

AFFIDAVIT OF CHRISTIAN D. MARTIN - 10
USAO #2019R00104

1  and parking expenses submitted in the return. MM works in restaurants as a food

2  preparer and had to drive to other locations on 2 or 3 occasions to pick up

3  supplies, but VALDEZ never asked about these expenses.  MM otherwise did not

4  operate a vehicle for work except for commuting.

5  **Description of the PREMISES**

6      18.     The PREMISES is a small house located in a residential neighborhood.

7  County property records list Albrecht as the property owner.  Clark Public Utilities

8  provides electric service for the PREMISES and the name on the account is Conexion

9  Latina.  The City of Vancouver provides other utilities, including water and sewage, for

10 the PREMISES, and the name on that account is Conexion Latina.  Conexion Latina is

11 registered with the Washington Secretary of State and the PREMISES is listed as the

12 principal office street address.  A sign affixed to the front door displays the Conexion

13 Latina name and logo along with the business hours, address, and phone numbers for

14 Albrecht, VALDEZ, and the office.

15     19.     Surveillance of the PREMISES has been conducted on numerous occasions

16 during January 2019.  Albrecht has been observed greeting clients at the entrance to the

17 PREMISES on several occasions, and a white Jeep Wrangler registered to Albrecht has

18 been seen parked in the front driveway of the PREMISES on all but one occasion.

19 VALDEZ has been observed working in his office at the front of the PREMISES and

20 greeting customers at the PREMISES' entrance on several occasions, and a dark-colored

21 Range Rover registered to VALDEZ has been observed on a parking strip directly east of

22 the PREMISES on all but one occasion.

23     20.     Despite being located in a residential area, nothing observed during

24 surveillance indicates that the PREMISES is used as a residence.  Albrecht and VALDEZ

25 each have homes separate from the PREMISES.  Albrecht lives in Vancouver, WA, and

26 VALDEZ lives in Portland, OR.  On several occasions both Albrecht's and VALDEZ's

27 registered vehicles, the Jeep and Range Rover, have been observed parked at their

28 respective homes prior to later being observed arriving at the PREMISES.  City of

AFFIDAVIT OF CHRISTIAN D. MARTIN - 11
USAO #2019R00104

1   Vancouver code enforcement records indicate that an inspection was conducted on the

2   PREMISES in March 2018 and again in April 2018 after one or more complaints were

3   received about a business being conducted at the PREMISES. The inspector indicated

4   that numerous customers were at the PREMISES during each inspection and that no one

5   was actually residing at the PREMISES.

## SUMMARY OF PROBABLE CAUSE

7       21.     Based on my training and experience, persons engaged in tax schemes,

8   conspiracies to defraud the United States, evasion of income tax, the filing of false

9   returns, and obstruction of the administration of the income tax law often maintain

10  records for long periods of time, particularly when they are involved in a pattern of

11  conduct over a long period of time. There are many reasons why criminal offenders

12  maintain evidence for long periods of time. The evidence may be innocuous at first

13  glance (e.g. financial, credit card and banking documents, travel documents, receipts,

14  documents reflecting purchases of assets, personal calendars, telephone and address

15  directories, check books, videotapes and photographs, utility records, ownership records,

16  letters and notes, tax returns and financial records, escrow files, telephone and pager bills,

17  keys to safe deposit boxes, packaging materials, computer hardware and software), but

18  have significance and relevance when considered in light of other evidence. The criminal

19  offender may no longer realize he still possesses the evidence or may believe law

20  enforcement could not obtain a search warrant to seize the evidence. The criminal

21  offender may also be under the mistaken belief that he/she has deleted, hidden or further

22  destroyed any computer-related evidence, which may be retrievable by a trained forensic

23  computer expert. In addition, 26 United States Code § 6001 and the corresponding

24  regulations require taxpayers keep records for no less than three years after the return is

25  filed.

26      22.     Based on my training and experience, persons engaged in tax schemes,

27  conspiracies to defraud the United States, evasion of income tax, the filing of false

28  returns, and obstruction of the administration of the income tax law, frequently retain

AFFIDAVIT OF CHRISTIAN D. MARTIN - 12
USAO #2019R00104

records of their correspondence and transactions within their business and other places under their control.  These records may be in the form of written communications, emails, receipts, negotiated instruments, contracts, bank statements, tax returns, and other records.  Records of this kind are often also stored on computer media.

23.     Based on my training and experience, I know that companies often keep their financial and business records where they conduct business.  This allows the company to consult and use the information when making business decisions and preparing financial information, including for legal and regulatory purposes such as filing tax returns.  Other such documents kept by companies include:

    a.  Banking records, such as bank statements, cancelled checks, withdrawal slips, check registers, deposit tickets, loan documents, and correspondence;

    b.  Income records, such as sales invoices, receipts, cash register tapes, cash receipt logs, sales journals, credit card merchant account statements and records, and customer information;

    c.  Expense records, such as purchase receipts, invoices, credit card statements, copies of cashier's checks,  petty cash logs, journals and ledgers of expenditures;

    d.  Asset acquisition and disposal records, such as titles, deeds, contracts, receipts, inventory records, invoices and depreciation schedules;

    e.  Payroll records, such as employee lists, time cards, Forms W-2, Forms W-4, and records of payments;

    f.  Financial records, such as income statements, cash flow statements, balance sheets, bookkeeping records, and income and expense projections;

    g.  Tax documents, such as filed and unfiled state and federal income and excise tax returns and employment tax returns;

    h.  Audit and compliance records, such as correspondence with or about audits and compliance requirements, copies of complete or incomplete financial disclosure forms, including Form 8300;

AFFIDAVIT OF CHRISTIAN D. MARTIN - 13
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

     i.   Regulatory and industry association information, such as guides to best practices, industry training/conference materials, rules and regulations, business and other licenses, pamphlets/notices, regulatory and compliance requirements, and correspondence with regulatory agencies; and

     j.   Corporate records, such as incorporation records, annual reports, stock books/ownership records, agreements, and shareholder or investor loans.

Surveillance of the PREMISES, along with records obtained by agents and reviewed in the course of this investigation, demonstrates that VALDEZ conducts business at the PREMISES, as Conexion Latina.

     24.   Based on my training and experience, I also know that owners of small and closely held businesses often keep personal records and documents at their place of business. These records often include personal bank records, records showing asset ownership and acquisition, investments, records of cash hoards, insurance records, loan records, promissory notes, agreements, correspondence, travel documents, safe deposit box keys, notes, and tax information.

     25.   Based upon my training and experience, I know that individuals and businesses commonly use computers or other electronic storage media to prepare and store the records described above and to prepare, complete, print, and file tax returns. It is likely that the records described above would be found on computers and other electronic storage media found in the PREMISES for the following reasons:

     a.   Each client interviewed observed VALDEZ prepare his/her respective return on a computer in the PREMISES.

     b.   For each client interviewed, VALDEZ used a computer in the PREMISES to print a copy of his/her 2017 federal income tax return.

     c.   All returns identified and believed to be prepared by VALDEZ were transmitted to the IRS electronically from a computer. The IRS received a Device ID as part of each transmission, and each client interviewed stated that his/her return was submitted to the IRS electronically.

     d.   While conducting surveillance, I personally observed VALDEZ sitting at a desk in his office, working on a computer.

AFFIDAVIT OF CHRISTIAN D. MARTIN - 14
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.      The website for Conexion Latina has a "Contact" page, which contains a "Contact by Email" form to be completed and submitted by clients for appointments. This same page also contains the following statement, "If you want to hire any of our services you must do it by making an appointment through our contact form, or through the telephone below."

26.     Based on my training and experience, I know that these business and personal records kept where a company conducts business can be useful in showing whether a person or entity reported all income to the IRS or evaded federal tax requirements.

27.     Based on my training and experience, when investigating tax crimes, I know that it is useful to compare tax and financial records maintained by a business over the course of multiple years in order to evaluate, among other things, the business' income, expenditures, and accounting practices. Based on my training and experience, companies retain business records for extended periods of time and are legally obligated to retain tax records for multiple years after a return is filed or tax is paid.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS[7]

28.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the application for the PREMISES seeks authorization to seize, image, or otherwise copy digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

---

[7] Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      *Internet.* The Internet is a global network of digital devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

b.      *Storage medium.* A storage medium is any physical object upon which data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AFFIDAVIT OF CHRISTIAN D. MARTIN - 15
USAO #2019R00104

29.     I submit that if a computer or storage medium is found at the PREMISES there is probable cause to believe that evidence, fruits, and/or instrumentalities of crimes – specifically, violations of  26 U.S.C. §§ 7201 & 7206(2) – will be stored on those digital devices or other electronic storage medium, for at least the following reasons:

a.     Based on actual inspection of evidence related to this investigation, such as bank statements, financial statements and emails, I am aware that computer equipment was used to generate, store, and print documents used in filing tax returns that could violate 26 U.S.C. §§ 7201 and 7206(2).  There is reason to believe that there are computer systems currently located at the PREMISES.

b.     A review of evidence and witness statements shows that VALDEZ prepared returns on a computer and printed client return copies from a computer.

c.     Review of evidence in this investigation shows that VALDEZ used the TaxAct software program to prepare and transmit tax returns to the IRS.

d.     Review of evidence in this investigation shows that VALDEZ entered email addresses, for accounts to which he had access to or it is reasonable to believe he had access to, into the TaxAct software program to receive status updates on the processing of returns.

e.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

f.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

g.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a

few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

      h.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

      30.     As further described in Attachment B to the application for the PREMISES, I am seeking permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital device in the PREMISES because, based on my knowledge, training and experience, I know:

      a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

      b.     Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer

AFFIDAVIT OF CHRISTIAN D. MARTIN - 17
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or storage medium at a relevant time. Further, forensic evidence on a digital device can show how and when it was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access to the digital device, its use, and events relating to the offense under investigation. This "timeline" information may tend to either inculpate or exculpate the user of the digital device. Last, forensic evidence on a digital device may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information on a digital device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the digital device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a digital device (e.g., logs indicating that the incriminating information was accessed with a particular program).

c.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

31.     I know that when an individual uses either a business or personal computer in keeping records the individual's business computers often will serve both as instrumentalities for committing the crime and storage media for evidence of the crime.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Based on the information in this Affidavit, I believe that the digital devices belonging to

2   VALDEZ and Conexion Latina at the PREMISES are instrumentalities of crime as well

3   as storage devices, because they constitute the means by which VALDEZ committed the

4   violations.  Any personal or business computers belonging to VALDEZ or Conexion

5   Latina at the PREMISES likely were used to commit the crimes of evasion of assessment

6   and willful aiding or assisting in the preparation of false tax returns in violation of 26

7   U.S.C. §§ 7201 & 7206(2) because they were likely used by VALDEZ (a) to prepare

8   client tax returns; (b) collect payments for the business; (c) to discuss services with

9   clients through email and other communications; (d) to post information to the website

10  and social media accounts of the business.   Therefore, I believe that in addition to seizing

11  the digital devices to conduct a search of their contents as set forth herein, there is

12  probable cause to seize those digital devices as instrumentalities of the criminal activity.

13          32.     If, after conducting its examination, law enforcement personnel determine

14  that any digital device is any instrumentality of the criminal offenses referenced above,

15  the government may retain that device during the pendency of the case as necessary to,

16  among other things, preserve the instrumentality evidence for trial, ensure the chain of

17  custody, and litigate the issue of forfeiture.  If law enforcement personnel determine that

18  a device was not an instrumentality of the criminal offenses referenced above, it shall be

19  returned to the person/entity from whom it was seized within 90 days of the issuance of

20  the warrant, unless the government seeks and obtains authorization from the Court for its

21  retention.

22  **PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION**

23          33.     Because of the nature of the evidence that I am attempting to obtain and the

24  nature of the investigation, I have not made any prior efforts to obtain the evidence based

25  on the consent of any party who may have authority to consent.  I believe, based upon the

26  nature of the investigation and the information I have received, that if VALDEZ becomes

27  aware of the search warrant, he may attempt to destroy any potential evidence, whether

28

AFFIDAVIT OF CHRISTIAN D. MARTIN - 19
USAO #2019R00104

1   digital or non-digital, thereby hindering law enforcement agents from the furtherance of

2   the criminal investigation.

3                    **RISK OF DESTRUCTION OF EVIDENCE**

4          34.    I know, based on my training and experience, that digital information can

5   be very fragile and easily destroyed.  Digital information can also be easily encrypted or

6   obfuscated such that review of the evidence would be extremely difficult, and in some

7   cases impossible.  I do not know whether, in the instant case, VALDEZ used encryption

8   on the computer systems he utilizes to engage in his crimes. If an encrypted computer is

9   either powered off, or if the user has not entered the encryption password and logged onto

10  the computer, it is likely that any information contained on the computer will be

11  impossible to decipher.  If the computer is powered on, however, and the user is already

12  logged onto the computer, there is a much greater chance that the digital information can

13  be extracted from the computer.  This is because when the computer is on and in use, the

14  password has already been entered and the data on the computer is accessible.  However,

15  giving the owner of the computer time to activate a digital security measure, pull the

16  power cord from the computer, or even log off of the computer, could result in a loss of

17  digital information that could otherwise have been extracted from the computer.

18          **REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF**
19          **TARGET COMPUTERS AND OTHER DIGITAL DEVICES**

20         35.    In most cases, a thorough search of a premise for information that might be

21  stored on storage media often requires the seizure of the physical storage media and later

22  off-site review consistent with the warrant.  In lieu of removing storage media from the

23  premises, it is sometimes possible to make an image copy of storage media.  Generally

24  speaking, imaging is the taking of a complete electronic picture of the computer's data,

25  including all hidden sectors and deleted files.  Either seizure or imaging is often

26  necessary to ensure the accuracy and completeness of data recorded on the storage media,

27  and to prevent the loss of the data either from accidental or intentional destruction.  This

28  is true because of the following:

AFFIDAVIT OF CHRISTIAN D. MARTIN - 20
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.   *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.   *Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.   *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

36.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to the application seeking authorization to search the PREMISES, and will specifically authorize a later review of the media or information consistent with that warrant.

37.    Consistent with the above, I am requesting the authority to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to the application seeking authorization to search the PREMISES, and to

AFFIDAVIT OF CHRISTIAN D. MARTIN - 21
USAO #2019R00104

conduct off-site searches of the digital devices or other electronic storage media and/or

forensic images, using the following procedures:

    a.  Upon securing the physical search site, the search team will conduct an initial review of any digital devices or other electronic storage media located at the PREMISES described in Attachment A that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

    b.  In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B.

    c.  A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer. When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the search location described in Attachment B will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the search location described in Attachment A that have previously connected to devices at other locations may contain data from those other locations.

    d.  In addition to creating an image of a physical or logical drive from a digital device or other electronic storage media, law enforcement may attempt to create an image of the random access memory ("RAM") of a digital device. Agents may only create an image of a digital device's RAM if the computer is powered on at the time of the search. This is because RAM is only active when the device is in operation. Any data contained in the RAM will be

AFFIDAVIT OF CHRISTIAN D. MARTIN - 22
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lost when the computer is powered off.  A computer's RAM may contain evidence related to who else is logged onto the computer (even remotely), open connections that might indicate a program is waiting for commands, passwords for encryption programs, hardware and software settings, maps of recent files and applications accessed, and information related to what communication vendors have recently been utilized on the device (i.e. instant messaging services, e-mail services, social networking sites, etc.). In addition, RAM may contain encryption keys necessary to access other elements of the subject device.

e.  If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

f.  Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.  Those techniques, however, may necessarily expose many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

g.  These methodologies, techniques and protocols may include the use of a "hash value" library to exclude normal operating system files that do not need to be further searched.  Agents may utilize hash values to exclude certain known files, such as the operating system and other routine software, from the search results. However, because the evidence I am seeking does not have particular known hash values, agents will not be able

AFFIDAVIT OF CHRISTIAN D. MARTIN - 23
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     to use any type of hash value library to locate the items identified in

2     Attachment B.

3                        **CONCLUSION**

4        40.    Based upon the evidence set forth herein, I respectfully submit that there is

5  probable cause to believe that VALDEZ committed the evasion of the assessment of

6  personal taxes for 2017 in violation of Title 26, United States Code, Section 7201.  I also

7  respectfully submit that there is probable cause to believe that VALDEZ willfully aided

8  or assisted in the preparation of false tax returns for the year 2017, in violation of

9  Title 26, United States Code, Section 7206(2).   Moreover, I believe that there is probable

10  cause to believe that evidence, fruits, and instrumentalities of these crimes, more fully

11  described in Attachment B, are currently located at the PREMISES more fully described

12  in Attachment A, as well as on and in any digital devices or other electronic storage

13  media found at or within the PREMISES.  I therefore request that the Court issue a

14  Warrant authorizing the search of the PREMISES, as well as any digital devices and

15  electronic storage media located at the PREMISES, for the items described in Attachment

16  B and the seizure of any such items found herein.

17

18                              Respectfully submitted,

19

20                             *Christian D. Martin*

21                             CHRISTIAN D. MARTIN, Affiant

22                             IRS Criminal Investigation

23        The above-named agent provided a sworn statement attesting to the truth of the

24  contents of the foregoing affidavit by telephone on the 1st day of February, 2019.

25

26                             *J. Richard Creatura*

27                             J. RICHARD CREATURA

28                             United States Magistrate Judge

AFFIDAVIT OF CHRISTIAN D. MARTIN - 24
USAO #2019R00104

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970